IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Karen M. Rice, Individually and as the Personal Representative of the Estate of Brian E. Rice,<br><br>Plaintiff,<br><br>vs.<br><br>The United States of America,<br><br>Defendant. | C. A. No.:  2:17-cv-1992-PMD<br><br><br>**COMPLAINT** |

Plaintiff, by and through her undersigned counsel, complaining of the Defendant, hereby alleges as follows:

**JURISDICTIONAL ALLEGATIONS**

1.    The Plaintiff, Karen M. Rice, widow of Decedent Brian E. Rice, is a resident of the State of South Carolina, and is the duly appointed Personal Representative of the Estate of Brian Rice (hereinafter "Decedent" or "Brian"), who died on September 24, 2014 in the County of Charleston.  The Plaintiff brings this action on behalf of the Estate of Decedent, for damages recoverable pursuant to § 15-5-90, Code of Laws of South Carolina (1976) and for damages recoverable by the statutory beneficiaries of Decedent pursuant to §15-51-10, et. seq., Code of Laws of South Carolina (1976, as amended).  Decedent Brian Rice is survived by one (1) adult child and a spouse.  Each of these family members is a "claimant" under S.C. Code. 15-32-210(2).  Plaintiff brings this action against the Defendant United States of America (hereinafter "USA") for injuries and damages Brian and Karen sustained from substandard medical care rendered to him by agents and/or employees of the USA.

- 1 -

2.      Plaintiff is bringing a cause of action against the USA for loss of consortium arising out of the injuries and damages suffered by her husband, Decedent Brian.  At all times relevant to this Complaint, Plaintiffs were citizens and residents of Charleston, South Carolina.

3.      Upon information and belief, Paul Everman Jr. M.D., (hereinafter "Everman"), is a licensed physician in the State of South Carolina, and at all times relevant hereto was acting within the course and scope of his employment and/or agency with the Ralph H. Johnson VA Medical Center in Charleston, South Carolina.  Everman was overseeing all of or a portion of Werner's and Brueckner's treatment of Decedent Rice and thus had a duty to ensure their treatment of Decedent Rice was within the appropriate standard of care.  As such, any deviations of the standard of care by Werner and Brueckner are imputed to Everman and the USA.

4.      Upon information and belief, Robert Werner, M.D., (hereinafter "Werner"), is a licensed physician in the State of South Carolina, and at all times relevant hereto was acting within the course and scope of his employment and/or agency with the Ralph H. Johnson VA Medical Center (hereinafter "VA") in Charleston, South Carolina.  Werner was at all times mentioned herein acting within the scope and course of his employment and/or agency at the VA.  Werner may also have been a resident at the time of the incidents alleged in the Complaint.

5.      Upon information and belief, Eric Brueckner, M.D., (hereinafter "Brueckner"), is a licensed physician in the State of South Carolina, and at all times relevant hereto was acting within the course and scope of his employment and/or agency at the Ralph H. Johnson VA Medical Center in Charleston, South Carolina.  Brueckner was at all times mentioned herein acting within the scope and course of his employment and/or agency at the VA.  Brueckner may also have been a resident at the time of the incidents alleged in the Complaint.

6.      At all times relevant to this action, physicians, nurses, residents, interns and staff healthcare providers for Decedent were employees and/or agents of the Defendant and were acting within the course and scope of their employment and/or agency or apparent agency.

7.      This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.* and 28 U.S.C. § 1346(b)(1), for money damages as compensation for injuries and damages suffered by Plaintiffs.

8.      As further described herein, these damages were caused by Defendant's actions and/or inactions and/or that of its employees, servants, and/or agents.

9.      The USA's employees, servants, and agents were working at different medical facilities, including, but not limited to, MUSC and the Ralph H. Johnson VA Medical Center (hereinafter "Johnson" or "Johnson VA" or "Hospital") located in Charleston County, South Carolina.

10.     Venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Charleston Division.

11.     In addition, the claims in this action arose from acts or omissions of the USA through its employees, servants, and agents acting within the course and scope of their employment with the Department of Veteran Affairs at different medical facilities in the State of South Carolina, including in Charleston, South Carolina.

12.     Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal written notice to the USA through the filing of a Form 95 with the Department of Veteran Affairs on August 30, 2016.

13.     The Department of Veteran Affairs denied the Form 95 claim on March 1, 2017.

14.    This suit has been filed within six (6) months from the date of said denial pursuant to 28 U.S.C. § 240l(b).

15.    An affidavit from a qualified medical expert (regarding the actions or inactions of an employee and/or agent of the USA) is being contemporaneously filed with this Complaint.

16.    The affidavit sets forth certain breaches of the standard of care by Defendant and/or its agents and/or employees.  Neither the affidavit, nor the allegations contained herein, are an all-inclusive list of negligence which will be attributed to Defendant and/or its agents and/or employees.  Additionally, the type(s) and or description(s) of damages described herein are/is not an all-inclusive list of recoverable damages.

17.    Upon information and belief, Defendant USA has attending physicians, nurses and other staff who are its agents, servants, and employees, and all acts or omissions complained of herein, performed by said agents, servants, and employees occurred during the course and scope of such agency and/or employment and is imputed to USA.

18.    The negligent acts, omissions, and liability of the Defendant includes its agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior.

**DAMAGES**

19.    Upon information and belief, USA employs medical professionals who provide medical care to patients through the Hospital.

20.    USA has different medical specialties, including, but not limited to, mental health, and primary care services.

21.     Because USA provides different services to its patients via different staff, it is subject to different occurrences of negligence, gross negligence, recklessness, and/or willful and wanton conduct.

22.     There are multiple occurrences of the breach of the standards of care in this case and upon information and belief, each breach (or occurrence) can be stacked to create several different "caps" (depending on what a judge ultimately decides).

23.     Upon information and belief, there are no actual caps in this case if Plaintiff proves Defendant USA's (through its agents and/or employees) conduct was grossly negligent or reckless.

24.     As such, unlimited damages are available (and/or recoverable) for the below causes of action against Defendant USA.

25.     In addition, "not every action taken by a medical professional in a hospital or doctor's office necessarily implicates medical malpractice and, consequently, the requirements of [S.C. Code Ann.] [S]ection 15-79-125." Dawkins v. Union Hosp. Dist., 408 S.C. 171, 178, 758 S.E.2d 501, 504 (2014).

26.     "However, at all times, the medical professional must 'exercise ordinary and reasonable care to ensure that no unnecessary harm [befalls] the patient.'" Id. at 178, 758 S.E.2d at 504 (further citations omitted).

27.     "The statutory definition of medical malpractice found in section 15-79-110(6) does not impact medical providers' ordinary obligation to reasonably care for patients with respect to nonmedical, administrative, ministerial, or routine care." Id. (further citation omitted).

28.     "Thus, medical providers are still subject to claims sounding in ordinary negligence." Id. (further citations omitted).

29.     There are no caps for general or ordinary negligence in South Carolina.

## FACTUAL ALLEGATIONS

30.    These claims concern substandard medical care provided to Decedent Brian E. Rice by agents, servants, and employees of medical facilities in South Carolina including, but not limited to, the Ralph H. Johnson VA Medical Center ("Johnson" or "VA") located in Charleston County, South Carolina.

31.    Decedent Brian E. Rice served in the United States military and thus, was entitled to medical care from the Veterans Administration.

32.    During the early portion of the summer of 2014, Decedent Brian Rice was becoming depressed and sought treatment from the VA Medical Center in Charleston.

33.    He had been undergoing treatment for both thyroid and prostate cancer and this was contributing to his depression.

34.    In July of 2014, Brian's physicians at the VA had prescribed him Celexa in 20mg doses four times a day to help treat his depression.

35.    On August 13, 2014, Brian returned to the VA still depressed.

36.    On this visit Nurse Gibson increased his does to 40 mg.

37.    On September 1, 2014, Brian admitted himself back to the VA Medical Center as he was suicidal.

38.    He was feeling hopeless and had had thoughts of committing suicide.

39.    He told his healthcare providers that he was seeing things that were not there, he could not sleep and he wanted to get a gun and shoot himself.

40.    As a result of these suicidal tendencies Brian was admitted to the hospital (VA).

41.    A PHQ-9 screen was performed and Brian scored a "20" which is suggestive of severe depression.

42.    On September 2, 2014, Brian was given a psychiatry consult by Brueckner and Everman.

43.    The reason for this consult was that Brian wanted to shoot himself with a gun.

44.    Brian told these Defendants that the Celexa had not helped with his depression, that he woke up sunburned and confused and could not tell his family how he got that way.

45.    He also told these Defendants that his depression had become so severe that he wanted to shoot himself with one of his guns and that he works in law enforcement.

46.    Later that day on September 2, 2014, Brian was admitted for inpatient psychiatric hospitalization.

47.    These healthcare providers diagnosed Brian with "mood disorder unspecified" and felt the Celexa did not appear to be working and may be responsible for Brian's abrupt suicidality.

48.    On September 3, 2014, Brian was seen by Defendants Werner and Everman.

49.    On this day, the treatment plan of these doctors for Brian was that his depression was "unstable" and his suicide risk was "severe".

50.    However, by this time Brian naturally wanted to leave and go home.

51.    These doctors felt that his suicidal tendencies were simply related to his taking Celexa and deemed him "not committable".

52.    These doctors then allowed Brian to leave the hospital against medical advice.

53.    These doctors were aware of the numerous guns Brian had in the house and that he did not want to remove them from the house.

54.    They were also aware the very reason Brian admitted himself to the VA was that he wanted to shoot himself with one of the guns these doctors were allowing him to go home to.

55.    On discharge, Brian was advised to follow up with a counselor, and other than that, nothing else was done to ensure the health and safety of Brian.

56.    On September 18, 2014, Brian sent an email to Nurse Gibson at the VA.

57.    In this email Brian stated: "Depression is the same, life sucks but I don't want any more Celexa. What a Clusterf--k. Still only sleeping about 3-4 hours a night.", however, despite this grave concern that Brian was still very depressed and very likely to harm himself or others, nothing was done by Brian's healthcare providers as a result of this troubling email.

58.    Five days later on September 23, 2014, Brian was home that evening when his wife and daughter came home with dinner.

59.    Shortly after their arrival for the first time in his life and completely out of the blue, Brian threatened Karen with one of his guns.

60.    Scared for her life, Karen ran outside and called the police.

61.    When the police arrive, Karen explained the situation to them and that he had never done anything like this before.

62.    The police then attempted to communicate with Brian who was still in the house and is refusing to come out.

63    At one point Brian came out onto the front porch and without any reason, began to shoot at the police.

64.    Incredibly, the police do not fire back, but again tried to communicate with him and get him to come out and surrender.

65.    At some point during the stand-off Brian escaped from the house and into the darkness.

66.    The police then realized he is no longer in the house and started off looking for him.

67.    By chance one of the officers out looking for Brian saw him and actually spoke to Brian, not realizing that it was Brian.

68.    The officer then realized it is Brian and took cover.

69.    The police then gave Brian another opportunity to surrender and end this dangerous situation.

70.    Again for no reason Brian started shooting at the officer he encountered outside of the house.

71.    Despite numerous pleas and opportunities to surrender and end the situation, Brian kept firing at the police.

72.    At around midnight, Brian's lengthy attempt at "suicide by cop" was accomplished when a SWAT marksman shot and killed Brian during his close proximity exchange with the initial officer he came upon.

73.    These healthcare providers had the following opportunities to properly treat and/or care for Brian:

a)    The should have committed Brian to the VA on September 3, 2014 instead of allowing him to go home to a house full of guns;

b)    They should have made sure the guns were removing and/or locked up so that Brian would not have had access to them.  The simple fact that a person locks up his own gun(s) serves absolutely no purpose in protecting that person; and,

c)    They should have communicated the seriousness of the situation to Brian's wife so she could take proper precaution to keep the guns away from Brian.

74.     That if any of these medical providers had performed any of these actions, more likely than not Brian Rice would not have committed suicide.

75.     Upon information and belief, the failure of Brian's healthcare providers to render proper medical care and treatment to the Decedent proximately resulted in his death and his death was foreseeable.

76.     As a direct and proximate result of the Defendant healthcare providers' failure to adhere to the standard of care, Plaintiff and Decedent suffered damages, including but not limited to, pain and suffering, mental anguish, loss of life, loss of financial support of Brian, funeral expenses and medical bills.

**FOR A FIRST CAUSE OF ACTION**
**(Medical Negligence – Wrongful Death)**

77.     Plaintiff reiterates and re-alleges the above paragraphs as though set forth herein verbatim and further alleges:

78.     Defendant USA, through agents and/or employees, undertook the duty to render medical care to Decedent in accordance with the prevailing and acceptable professional standards of care in the national community.

79.     Defendant USA, through agents and/or employees, undertook the duty to render routine ministerial care to Decedent in accordance with the prevailing and acceptable professional standards of care in the national community.

80.     Defendant USA, through agents and/or employees, undertook the duty to create administrative policies and procedures which were below acceptable professional standards of care in the national community.

81.     Notwithstanding said undertakings, and while Decedent was under the care of agents and/or employees of Defendant USA, Defendant departed from prevailing and acceptable

professional standards of care in its treatment of Brian and was thereby negligent, careless, grossly negligent, reckless, and in violation of the duties owed to him.  As such, the USA is liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

      a.      in failing to commit Brian for further evaluation;

      b.      in failing to make sure the guns were properly removed from Brian's access;

      c.      in failing to communicate the seriousness of Brian's condition to Brian family so they could take the proper precautions to ensure his safety;

      d.      in failing to ensure that proper and safe care be performed;

      e.      in failing to ensure the safety of their patient;

      f.      in failing to be a patient advocate;

      g.      in failing to properly care for the patient during his hospitalization at the defendant hospital;

      h.      in failing to have in place proper policies and procedures in place, and if such policies and procedures were in place, then failing to implement and enforce such polices and procedures, and;

      i.      as otherwise may be shown by the evidence in this case.

      82.      As a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness by Defendant, the Plaintiff's Decedent suffered from severe debilitating injuries which resulted in his death, as a result of which the Plaintiff's Decedent's statutory beneficiaries have lost the aid, comfort, support, society and companionship of the Decedent, and have suffered severe and extreme emotional distress, anxiety, grief and sorrow for which the Plaintiff is entitled to recover on behalf of statutory beneficiaries damages pursuant to § 15-51-10, et. seq., Code of Laws of South Carolina (1976, as amended) in an amount to be determined by a jury at the trial of this action.

2:17-cv-01992-PMD    Date Filed 07/27/17    Entry Number 1    Page 12 of 13

## FOR A SECOND CAUSE OF ACTION
### (Medical Negligence - Survivorship Action)

83.    Plaintiff reiterates and re-alleges the above paragraphs as though set forth herein verbatim, and further alleges:

84.    The Plaintiff's Decedent's estate, as a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness of the Defendants, as aforesaid, has incurred expenses in the form of medical, funeral and burial expenses.  The Plaintiff is further informed and does believe that as a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness of the Defendant, as aforesaid, the Plaintiff's Decedent suffered fear, physical pain, and suffering, and mental and emotional distress and anguish in the time before his death, for which the Plaintiff's Decedent's estate is entitled to an award of damages pursuant to §15-5-90, Code of Laws of South Carolina (1976) in an amount to be determined by a jury at the trial of this action.

## FOR A THIRD CAUSE OF ACTION
### (Loss of Consortium)

85.    The Plaintiff repeats and re-alleges the above paragraphs as though fully set forth herein verbatim, and further alleges:

86.    As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and gross negligence of the Defendant above-named, the Plaintiff Karen Rice, individually and as the wife of Brian Rice, has suffered loss of consortium, loss of society and loss of marital relationship with the Decedent for which the Plaintiff is entitled to an award of damages in an amount to be determined by a jury at the trial of this action.

WHEREFORE, Plaintiff respectfully prays for judgment against the USA for actual and consequential damages in an amount to be determined by a judge at trial, for the costs and

- 12 -

- 13 -

disbursements of this action, and for such other and further relief as this Court deems just and proper.

**MCGOWAN, HOOD & FELDER, LLC**


       s/ Robert V. Phillips          
Robert V. Phillips, Esq.
1539 Health Care Drive
Rock Hill, South Carolina 29732
803.327.7800 – Office
803.328.5656 – Facsimile

Federal Bar ID No:  07653
rphillips@mcgowanhood.com
*Attorney for Plaintiff*

Rock Hill, South Carolina
July 27, 2017