IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KAREN M. RICE, individually and as the personal representative of the estate of Brian E. Rice, <br><br>   Plaintiff, <br><br>   vs. <br><br> UNITED STATES OF AMERICA, <br><br>   Defendant. | No. 2:17-cv-01992-DCN <br><br> **ORDER** |

The following matter is before the court on defendant United States of America's ("the government") motion to dismiss, ECF No. 26. For the reasons set forth below, the court grants the motion.

**I. BACKGROUND**

This case arises out of the death of Brian Rice ("Mr. Rice"), plaintiff Karen Rice's ("Mrs. Rice") husband. Mr. Rice served in the military and received medical care from the Ralph H. Johnson VA Medical Center ("the VA Medical Center") in Charleston, South Carolina. During early summer of 2014, Mr. Rice sought treatment from the VA Medical Center for depression. He had also been undergoing treatment for thyroid and prostate cancer, which contributed to his depression. In July 2014, doctors at the VA Medical Center prescribed Celexa to treat Mr. Rice's depression. On August 13, 2014, Mr. Rice was still suffering from depression and returned to the VA Medical Center, where his Celexa dosage was increased. Then on September 1, 2014, Mr. Rice admitted himself to the VA Medical Center because he was suicidal. He told his physicians that he

1

was hallucinating, he could not sleep, and he wanted to shoot himself.  A PHQ-9 screen was performed on Mr. Rice, and he scored a "20," which suggested severe depression.

On September 2, 2014, Mr. Rice had a psychiatric consult with Dr. Paul Everman, Jr. and Dr. Eric Brueckner.  During this consult, Mr. Rice told the physicians that the Celexa was not helping with his depression, he worked in law enforcement and owned guns, and he wanted to shoot himself with one of his guns.  Later that day, Mr. Rice was admitted for in-patient psychiatric hospitalization.  He was diagnosed with "mood disorder unspecified," and the physicians believed that the Celexa may be the cause of Mr. Rice's suicidal thoughts.  On September 3, 2014, Mr. Rice saw Drs. Everman and Brueckner again.  Mrs. Rice alleges that on this day, Mr. Rice's treatment plan indicated that Mr. Rice's depression was "unstable," and his suicide risk was "severe."[1]  Mr. Rice told medical personnel that he wanted to go home.  The doctors deemed Mr. Rice "not commitable," and Mr. Rice left the VA Medical Center against medical advice.  He was advised to follow up with a counselor.

On September 18, 2014, Mr. Rice sent an email to a nurse at the VA Medical Center indicating that he was still depressed and was only sleeping 3 to 4 hours a night.

---

[1] The government argues that this allegation is factually inaccurate and attaches Mr. Rice's medical record to show that these comments were made on Mr. Rice's initial treatment plan and therefore not representative of Mr. Rice's mental state on September 3.  The government argues that the court can consider this record because the treatment plan was referenced and relied upon in the complaint.  See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (holding that "courts may consider a document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.").  Upon review of the medical records, the court cannot determine whether these notes were made on September 1, when Rice was admitted to the VA Medical Center, or September 3, when he was discharged.  However, this dispute is not material to the resolution of the instant motion.

Then, on the evening of September 23, 2014, Mr. Rice was at home when Mrs. Rice and their daughter came home. Soon after they arrived, "for the first time in his life and completely out of the blue," Mr. Rice threatened Mrs. Rice with a gun. Compl. ¶ 59. Mrs. Rice ran outside and called the police. When the police arrived, Mrs. Rice explained the situation, and police tried to convince Mr. Rice to come out of the house. Mr. Rice came outside at one point with his gun and started to shoot at police, but the police did not fire back. Instead, they tried to convince Mr. Rice to surrender. At some point, Mr. Rice escaped the house and fled. When the police realized Mr. Rice had fled, they began looking for him. One of the officers found Mr. Rice and began talking to him, not realizing it was Mr. Rice. One he realized it was Mr. Rice, the police officer took cover. Police tried again to convince Mr. Rice to surrender, but Mr. Rice started shooting at the officer who found him. Despite the police's efforts to end the situation, Mr. Rice kept firing at the officers. Around midnight, a SWAT marksman shot and killed Mr. Rice, which Mrs. Rice characterizes as "suicide by cop." Id. ¶ 72.

Mrs. Rice brought this case pursuant to the Federal Tort Claims Act ("FTCA") on July 27, 2017, alleging medical negligence for wrongful death, medical negligence as a survivorship action, and loss of consortium. Mrs. Rice also filed an affidavit by Dr. Stephen Price opining on the government's negligence, as required by South Carolina law in actions alleging professional negligence, S.C. Code. Ann. § 15-36-100(B), and death as a result of medical malpractice, id. § 15-79-125(A). The government filed a motion to dismiss on June 22, 2018. ECF No. 26. Mrs. Rice responded on July 20, 2018, ECF No. 29, and the government replied on August 2, 2018, ECF No. 30. The court held a hearing on the motion on February 13, 2019. The motion is ripe for review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) [] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

The government initially argued that Mrs. Rice's claims should be dismissed because (1) the government's duty to Mr. Rice ended when he left the custody and care

of the VA Medical Center, and (2) Mrs. Rice cannot show that the government's alleged acts were the proximate cause of Mr. Rice's death. However, at the hearing on the motion, the government conceded that it owed a duty to Mr. Rice; therefore, the only issue before the court is whether Mrs. Rice has sufficiently pleaded proximate cause. The court finds that she has not.

The FTCA provides "for 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.'" Wood v. Standard Prods. Co., Inc., 671 F.2d 825, 829 (4th Cir. 1982) (quoting United States v. Orleans, 425 U.S. 807, 813 (1976)). Since Mrs. Rice brought this action under the FTCA, she must establish the government's liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Cantrell v. United States, 735 F. Supp. 670, 672 (E.D.N.C. 1988). The FTCA does not create new causes of action, and "only serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar (Panama) SA. v. United States, 967 F.2d 965, 969 (4th Cir. 1992). Therefore, the issue before the court is whether a private person could be held liable under South Carolina law if he committed the acts that were allegedly committed by the government.

As an initial matter, Mrs. Rice characterizes Mr. Rice's death as a "suicide by cop." Compl. ¶ 72. However, Mr. Rice was shot and killed by law enforcement, meaning that Mr. Rice did not technically kill himself. The government initially seemed

5

to accept that Mr. Rice's death was a suicide, and both parties cited to case law related to suicide. Yet in its reply brief, the government changed positions and asserted that the death was not a suicide but a "justifiable homicide by law enforcement to protect their lives." ECF No. 30 at 2. The government goes on to argue that "suicide by cop" is a legal conclusion drawn from facts that the court need not accept. Id. at 5. South Carolina courts have not addressed whether "suicide by cop" is a fact that the court must accept as true for the purposes of a 12(b)(6) motion or a legal conclusion that the court may question. However, the court need not consider this issue because even when characterizing Mr. Rice's death as a "suicide," which is the characterization that is more favorable to Mrs. Rice, the court finds that Mrs. Rice has not sufficiently pleaded proximate cause. As such, the court declines to venture into uncharted territories of South Carolina state law to determine whether "suicide by cop" is a fact or legal conclusion.

Mrs. Rice pleaded her case as a "medical negligence" case, but at the hearing, the parties agreed that this case is a medical malpractice case. In South Carolina, the elements of a medical malpractice claim are:

> (1) the presence of a doctor-patient relationship between the parties; (2) recognized and generally accepted standards, practices, and procedures which are exercised by competent physicians in the same branch of medicine under similar circumstances; (3) the medical or health professional's negligence, deviating from generally accepted standards, practices, and procedures; (4) such negligence being a proximate cause of the plaintiff's injury; and (5) an injury to the plaintiff.

Brouwer v. Sisters of Charity Providence Hosps., 763 S.E.2d 200, 203 (S.C. 2014). The question here is whether, taking Mrs. Rice's factual allegations in the complaint as true, the government's alleged deviation from generally accepted standards, practices, and procedures proximately caused Mr. Rice's death. Under South Carolina law,

"[p]roximate cause requires proof of (1) causation in fact and (2) legal cause." Bramlette v. Charter-Med.-Columbia, 393 S.E.2d 914, 916 (S.C. 1990) (citation omitted). "Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence," while legal cause requires that the plaintiff's injury was foreseeable, or in other words, "a natural and probable consequence of the defendant's negligence." Id. "Foreseeability is to be judged from the perspective of the defendant at the time of the negligent act, not after the injury has occurred." Crolley v. Hutchins, 387 S.E.2d 716, 717 (S.C. Ct. App. 1989).

An intervening act between a defendant's conduct and a plaintiff's injury may severe the causal link between the two and prevent proximate cause from being established. Dixon v. Besco Eng'g, Inc., 463 S.E.2d 636, 640 (S.C. Ct. App. 1995). "For an intervening act to break the causal link and insulate the tortfeasor from further liability, the intervening act must be unforeseeable." Id. In South Carolina, "[w]here an action is brought under a wrongful death statute[,] the general rule is that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable." Watson v. Adams, 2015 WL 1486869, at *6 (D.S.C. March 31, 2015) (quoting 11 A.L.R.2d 751); see also Scott v. Greenville Pharmacy, S.E.2d 324, 328 (S.C. 1948) ("The voluntary willful act of suicide of an injured person, who knows the purpose and physical effect of his act, is generally held to be such a new and independent agency as does not come within and complete a line of causation from the injury to the death so as to render the one responsible for the injury civilly liable for the death."). Pursuant to this general rule, Mr. Rice's "suicide" broke the causal link between the VA Medical Center's

7

medical care and Mr. Rice's death, meaning that the government could not have proximately caused Mr. Rice's death.

Watson identifies several exceptions to this general rule that can result in a defendant being liable for a plaintiff's suicide. The only one that may be relevant here is when "the decedent was in the custody and under the care of the defendant, and suicide was both foreseeable and the 'natural and probable consequence' of the defendants' negligence." 2015 WL 1486869, at *7 (quoting Bramlette, 393 S.E.2d at 916). The government argues that this exception does not apply here because Mr. Rice was not in the government's custody at the time of his death. Mrs. Rice responds by arguing that even though Mr. Rice was not in the physical custody of the government at the time of his death, she has still sufficiently alleged proximate cause due to the continuing physician-patient relationship between the government and Mr. Rice.

The Court of Appeals for South Carolina considered proximate cause in a factually similar scenario in McKnight v. S.C. Dep't of Corrections, 684 S.E.2d 566 (S.C. Ct. App. 2009), where the decedent was not in the defendant's custody at the time of his suicide, but the defendant treated the decedent for mental health issues prior to his death. In McKnight, an inmate at the South Carolina Department of Corrections ("SCDOC") committed suicide. 684 S.E.2d at 567. The decedent's personal representative sued SCDOC and Just Care, Inc. ("Just Care"), the contractor who provided the SCDOC with medical services. Id. In September 2003, the decedent was treated for depression by Just Care after reporting he swallowed ten razor blades. Id. Just Care prescribed Zoloft and released him, transferring him back to SCDOC's custody. Id. at 568. On October 5, 2004, the decedent committed suicide while in SCDOC's custody but not, importantly, in

8

Just Care's custody. Id. The trial court granted Just Care's motion for summary judgment based on a lack of proximate cause, and the Court of Appeals for South Carolina affirmed. Id. at 567. The court was persuaded by courts in other states that found no proximate cause between a medical provider's care and the decedent's suicide when the decedent was no longer in the medical provider's custody and the suicide occurred anywhere from three weeks to over a month after the decedent received treatment. Id. at 569–70. Moreover, the complaint alleged that employees of SCDOC abused the decedent without justification, and the decedent's medical record reflected several instances of prison guards using gas on the decedent, suggesting other unforeseeable intervening acts that could have contributed to the decedent's suicide. Id. at 570. Considering the passage of over a year between Just Care's medical care of the decedent and his suicide and other intervening acts like the alleged abuse, the court agreed with the trial court that there was no proximate cause between Just Care's medical care and the decedent's suicide. Id. at 571.

Comparing this case to the facts of McKnight, Mr. Rice died 20 days after he was discharged from the VA Medical Center, which is significantly shorter than the year between the decedent's medical care in McKnight and his suicide. Yet in one of the cases in that McKnight cited as instructive, the amount of time that passed between the patient's release from medical care and his suicide was three weeks, which is close to the amount of time passed here. Id. at 569 (citing Paradies v. Benedictine Hosp., 77 A.D.2d 757, 759 (N.Y. App. Div. 1980) (citations omitted) ("[A]s a matter of law the decedent's suicide was not a proximate cause of any alleged negligence . . . . Plaintiff has failed to present any evidence establishing a causal connection between the alleged acts of

negligence and the subsequent suicide which occurred some three weeks after the decedent's release.")). Moreover, as the government asserts, there are several intervening acts between Mr. Rice's medical care and his death that were not foreseeable, including the interactions with his wife where he threatened her, Mr. Rice's initial interactions with the police while still in his house, Mr. Rice's subsequent fleeing of the police, and the ultimate stand-off with police that resulted in Mr. Rice's death. Even taking the allegations in the complaint as true, the unforeseeable intervening acts and the time between Mr. Rice's discharge from the VA Medical Center and his death break the causal link between the government's medical care and Mr. Rice's death such that proximate cause cannot be established.

Mrs. Rice argues that she sufficiently alleged proximate cause because she alleges that Mr. Rice's death was "a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness by Defendant." ECF No. 1 at 11. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quotations omitted). Simply alleging that the government was the proximate cause is not legally sufficient to survive a motion to dismiss. Mrs. Rice also argues this issue is inappropriate for a motion to dismiss and she should be allowed time during discovery to develop additional facts about proximate cause; however, the intervening acts that affect proximate cause have already been established in the complaint. No facts could develop during discovery that would alter the existence of these intervening acts. As such, discovery would not change the court's conclusion.

Mrs. Rice also argues that the government fails to account for Hoeffner v. The Citadel, 429 S.E.2d 190 (S.C. 1993).  In Hoeffner, the parents of a Citadel student brought a wrongful death action against the Citadel and the Citadel's physician after the student discussed his suicidal thoughts with the physician and subsequently committed suicide.  429 S.E.2d at 191–92.  The jury found for the Citadel and its physician, and the parents appealed.  Id. at 191.  The issues on appeal were (1) whether evidence about the physician being placed on probation was properly excluded for both substantive and impeachment purposes; (2) whether the trial court erred by allowing the physician to respond to the parents' comments about the physician's reputation in their opening and closing statements; and (3) whether the trial court erred by instructing the jury that the son's suicide could constitute assumption of risk.  Id. at 192–93.  The court only found error with the assumption of risk jury instruction.  Id. at 193.  It explained that "[t]he defense of assumption of the risk applies where the plaintiff assumes a risk of harm arising from the defendant's negligent or reckless conduct rather than his own."  Id. at 193.  In other words, when a plaintiff understands a known danger created by a defendant and then voluntarily exposes himself to the risk, a defendant may assert that the plaintiff assumed the risk of being harmed by the defendant's conduct.  The court concluded that "[i]t is clear that [the son]'s act of suicide cannot establish that he assumed a risk of harm created by the defendant's alleged negligence in caring for his mental health."  Id.  This is so because "whenever a duty exists to prevent suicide, the act of suicide resulting from a breach of that duty cannot establish a defense to liability for the breach."  Id.  In other words, when a plaintiff commits suicide as a result of a defendant's negligent care in

11

preventing the suicide, the plaintiff cannot be said to have assumed the risk of the defendant's negligent care.

Mrs. Rice contends that this discussion of assumption of risk leads to the conclusion that "a plaintiff's foreseeability argument and her proximate cause claim are much stronger in a suit against a doctor who was treating the decedent for suicidal ideation." ECF No. 29 at 17. Mrs. Rice goes on to explain that "the very suicide which the defendant has the duty to prevent cannot constitute assumption of the risk or contributory negligence as a matter of law." Id. (citing Hoeffner, 429 S.E.2d at 193). It is unclear to the court how Hoeffner relates to a proximate cause analysis. Hoeffner does not discuss the issue of proximate cause, and the portion of the case cited by Mrs. Rice relates to Hoeffner's discussion about assumption of risk, which is a defense to negligence, not a theory under proximate cause. Therefore, Hoeffner provides no support to Mrs. Rice's argument that the government proximately caused Mr. Rice's death.

### IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 25, 2019
Charleston, South Carolina**