# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| KAREN RICE, *individually and as personal representative of the estate of Brian E. Rice*, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-1992-DCN |
| vs. | ) ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant United States of America's (the "government") supplemental motion to dismiss, ECF No. 57. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

This case arises out of the death of Brian Rice ("Mr. Rice"), plaintiff Karen Rice's ("Mrs. Rice") husband. Mr. Rice served in the military and received medical care from the Ralph H. Johnson Department of Veterans Affairs Medical Center (the "VAMC") in Charleston, South Carolina. During early summer of 2014, Mr. Rice sought treatment from the VAMC for depression. He had also been undergoing treatment for thyroid and prostate cancer, which contributed to his depression. In July 2014, doctors at the VAMC prescribed Celexa to treat Mr. Rice's depression. On August 13, 2014, Mr. Rice was still suffering from depression and returned to the VAMC, where his Celexa dosage was increased. Then, on September 1, 2014, Mr. Rice admitted himself to the VAMC because he was suicidal. He told his physicians that he was hallucinating, he could not

1

sleep, and he wanted to shoot himself.  A PHQ-9 screen was performed on Mr. Rice, and he scored a "20," which suggested severe depression.

On September 2, 2014, Mr. Rice had a psychiatric consult with Dr. Paul Everman, Jr. and Dr. Eric Brueckner.  During this consult, Mr. Rice told the physicians that the Celexa was not helping with his depression, he worked in law enforcement and owned guns, and he wanted to shoot himself with one of his guns.  Later that day, Mr. Rice was admitted for in-patient psychiatric hospitalization.  He was diagnosed with "mood disorder unspecified," and the physicians believed that the Celexa may be the cause of Mr. Rice's suicidal thoughts.  On September 3, 2014, Mr. Rice saw Drs. Everman and Brueckner again.  Mrs. Rice alleges that on this day, Mr. Rice's treatment plan indicated that Mr. Rice's depression was "unstable," and his suicide risk was "severe."  ECF No. 1, Compl. ¶ 49.  Mr. Rice told medical personnel that he wanted to go home.  The doctors deemed Mr. Rice "not commitable," and Mr. Rice left the VAMC against medical advice.  Id. ¶ 51.  He was advised to follow up with a counselor.

On September 18, 2014, Mr. Rice sent an email to a nurse at the VAMC indicating that he was still depressed and was only sleeping 3 to 4 hours a night.  Subsequently, on the evening of September 23, 2014, Mr. Rice was at home when Mrs. Rice and their daughter came home.  Soon after they arrived, "for the first time in his life and completely out of the blue," Mr. Rice threatened Mrs. Rice with a gun.  Id. ¶ 59.  Mrs. Rice ran outside and called the police.  When the police arrived, Mrs. Rice explained the situation, and police tried to convince Mr. Rice to come out of the house.  Mr. Rice came outside at one point with his gun and started to shoot at the police, but the police did not fire back.  Instead, they tried to convince Mr. Rice to surrender.  At some

2

point, Mr. Rice escaped the house and fled.  When the police realized Mr. Rice had fled, they began looking for him.  One of the officers found Mr. Rice and began talking to him, not realizing it was Mr. Rice.  One he realized it was Mr. Rice, the police officer took cover.  Police tried again to convince Mr. Rice to surrender, but Mr. Rice started shooting at the officer who found him.  Despite the police's efforts to end the situation, Mr. Rice kept firing at the officers.  Around midnight, a SWAT marksman shot and killed Mr. Rice, which Mrs. Rice characterizes as "suicide by cop."  Id. ¶ 72.

Mrs. Rice brought this case pursuant to the Federal Tort Claims Act ("FTCA") on July 27, 2017, alleging medical negligence for wrongful death, medical negligence as a survivorship action, and loss of consortium.  See generally id.  Mrs. Rice also filed an affidavit by Dr. Stephen Price opining on the government's negligence, as required by South Carolina law in actions alleging professional negligence, S.C. Code. Ann. § 15-36-100(B), and death as a result of medical malpractice, id. § 15-79-125(A).  The government filed a motion to dismiss on June 22, 2018.  ECF No. 26.  On March 25, 2019, this court granted defendant's motion to dismiss on the basis that the complaint failed to sufficiently plead proximate cause (the "Order of Dismissal").  ECF No. 43.  In so finding, the court relied on a "general rule" of South Carolina law providing that "suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death."  Id. at 7–8 (citing Watson v. Adams, 2015 WL 1486869, at *6 (D.S.C. Mar. 31, 2015) and Scott v. Greenville Pharmacy, 48 S.E.2d 324 (S.C. 1948)).

Mrs. Rice noticed a timely appeal on March 29, 2019.  On July 13, 2021, the United States Court of Appeals for the Fourth Circuit vacated this court's Order of

Dismissal. Rice v. United States, 2021 WL 2935344 (4th Cir. July 13, 2021). The Fourth Circuit explained,

> After the district court issued its opinion, the Supreme Court of South Carolina, responding to a certified question from this court, clarified that there is no "general rule that suicide is an intervening act which breaks the chain of causation and categorically precludes recovery in wrongful death actions," explaining that South Carolina "courts . . . appl[y] traditional principles of proximate cause to individual factual situations when considering whether a personal representative has a valid claim for wrongful death from suicide."

Id. at *1 (citing Wickersham v. Ford Motor Co., 853 S.E.2d 329, 331 (S.C. 2020), reh'g denied (Feb. 5, 2021)). Accordingly, the Fourth Circuit vacated this court's order and remanded to "consider the sufficiency of [Mrs.] Rice's complaint in light of Wickersham." Id. On remand, the government moved for leave to file a supplemental memorandum on October 21, 2021. ECF 55. The court granted that motion on November 17, 2021, ECF No. 56, and the government filed its supplemental motion to dismiss on the same day, ECF No. 57. On December 1, 2021, Rice responded in opposition. ECF No. 58. As such, the supplemental motion to dismiss is now ripe for the court's review.

## II.  STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled

4

to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

The government argues that the court should dismiss Mrs. Rice's complaint because the acts of the physicians at the VAMC were not a proximate cause of Mr. Rice's death, notwithstanding Wickersham's clarification that there is no general rule that suicide breaks that chain of causation to categorically preclude recovery in wrongful death actions. Upon consideration, the court finds dismissal inappropriate at this stage.

This court has construed Mrs. Rice's claim as a medical malpractice claim. ECF No. 46 at 3 ("Mrs. Rice pleaded her case as a 'medical negligence' case, but at the hearing, the parties agreed that this case is a medical malpractice case."). To state a cause of action for medical malpractice in South Carolina, the plaintiff must plead the following elements:

> (1) The presence of a doctor-patient relationship between the parties; (2) Recognized and generally accepted standards, practices, and procedures which are exercised by competent physicians in the same branch of medicine under similar circumstances; (3) The medical or health professional's negligence, deviating from generally accepted standards, practices, and procedures; (4) Such negligence being a proximate cause of the plaintiff's injury; and (5) An injury to the plaintiff.

Brouwer v. Sisters of Charity Providence Hosps., 763 S.E.2d 200, 203 (S.C. 2014) (citations omitted). For suicide cases specifically, "health care professionals are subject to liability for failure to prevent suicide only when departure from the standards of their profession proximately causes their patient's suicide [and South Carolina law] does not impose strict liability on those with a duty to prevent suicide." Hoeffner v. Citadel, 429 S.E.2d 190, 194 (S.C. 1993). The question on remand is whether, taking Mrs. Rice's factual allegations in the complaint as true, the government's alleged deviation from generally accepted standards, practices, and procedures proximately caused Mr. Rice's death.

Under South Carolina law, "[p]roximate cause requires proof of (1) causation in fact and (2) legal cause." Bramlette v. Charter-Med.-Columbia, 393 S.E.2d 914, 916 (S.C. 1990) (citation omitted). To show proximate cause, a plaintiff must show both causation in fact and legal cause. Madison ex rel. Bryant v. Babcock Ctr., Inc., 638 S.E.2d 650, 662 (S.C. 2006) (citing Oliver v. S.C. Dep't of Highways & Pub. Transp., 422 S.E.2d 128, 130 (S.C. 1992)). A plaintiff proves causation in fact by establishing that the injury would not have occurred "but for" the defendant's negligence, and legal cause by establishing foreseeability. Id. (citing Oliver, 422 S.E.2d at 130). "Foreseeability is determined by looking at the natural and probable consequences of the

6

complained of act, although it is not necessary to prove that a particular event or injury was foreseeable." Id. (citations omitted).

The defendant's negligence does not have to be the sole proximate cause of the plaintiff's injury; instead, the plaintiff must prove the defendant's negligence was at least one of the proximate causes of the injury. Id. An intervening force may be a superseding cause that relieves an actor from liability, but for there to be relief from liability, the intervening cause must be one that could not have been reasonably foreseen or anticipated. Rife v. Hitachi Const. Mach. Co., 609 S.E.2d 565, 569 (S.C. Ct. App. 2005). In other words, the intervening negligence of a third party will not excuse the first wrongdoer if such intervention ought to have been foreseen in the exercise of due care. Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 83 (S.C. 1998). "In such case, the original negligence still remains active, and a contributing cause of the injury." Id. Accordingly, if the intervening acts are set into motion by the original wrongful act and are the foreseeable result of the original act, the "final result, as well as every intermediate cause, is considered in law to be the proximate result of the first wrongful cause." Wallace v. Owens–Ill., Inc., 389 S.E.2d 155, 157 (S.C. Ct. App. 1989).

"In most cases, foreseeability ends up being addressed as a question of fact for the jury." Wickersham, 853 S.E.2d at 332 (citing Oliver, 422 S.E.2d at 131). "In the first instance, however, legal cause is just what its name suggests—a question of law." Id. "When the evidence is susceptible to only one inference, legal cause becomes a matter of law for the court." Id. (cleaned up) (citing Matthews v. Porter, 124 S.E.2d 321, 323 (S.C. 1962); Gause v. Smithers, 742 S.E.2d 644, 649 (S.C. 2013) (discussing foreseeability, and stating "in rare or exceptional cases . . . the issue of proximate cause [may] be

7

decided as a matter of law")). Accordingly, "[f]irst, the court must decide as a matter of law whether the suicide was unforeseeable. If the court determines the suicide was not unforeseeable as a matter of law, the jury must consider foreseeability." Id. at 333.

       The court does not find Mr. Rice's death unforeseeable as a matter of law. The government argues that the facts alleged are susceptible to only one reasonable inference: that it was unforeseeable that the government's actions would result in the tragic chain of events that led to Mr. Rice's death twenty days after he left the VAMC. Specifically, the government argues that to prove proximate cause, Mrs. Rice would have to prove that (1) Mr. Rice would in some way provoke Mrs. Rice or another person; (2) Mr. Rice would take this action with the ultimate intent of getting into a deadly exchange with the police; (3) Mrs. Rice (or some other person) would call the police; (4) Mr. Rice would at no point surrender to the police; and (5) the police would in fact kill Mr. Rice. In so arguing, the government overstates Mrs. Rice's burden in proving proximate cause. Under South Carolina law, the VAMC's alleged malpractice can be a proximate cause of Mr. Rice's death if "either the intervening act or the injury itself was foreseeable." Bramlette, 393 S.E.2d at 917. The foreseeability test does not require a defendant to anticipate the exact circumstances of the ultimate injury but rather makes the defendant responsible for "anything which appears to have been a natural and probable consequence of his negligence." Id. at 916 (citing Greenville Mem'l Auditorium v. Martin, 391 S.E.2d 546 (S.C. 1990)). In other words, "[i]t is unessential that the precise manner in which the injuries might have occurred, or where sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of the injury was within this range." Hughes v.

Children's Clinic, P. A., 237 S.E.2d 753, 756–57 (S.C. 1977).  As alleged, Mr. Rice's death falls comfortably within this range.

The complaint alleges that Mr. Rice sought treatment for depression from the VAMC, where he was prescribed Celexa.  He returned to the VAMC the next month stating that he was still suffering from depression, and the VAMC physicians increased his Celexa dosage in response.  Approximately two weeks later, Mr. Rice admitted himself to the VAMC because he was suicidal.  When he was admitted for in-patient psychiatric hospitalization, the government's treatment plan indicated that Mr. Rice's depression was unstable and that his suicide risk was severe.  Mr. Rice told his physicians that he was hallucinating, that he could not sleep, and that he wanted to shoot himself.  He explained that Celexa was not helping with his depression, and the physicians noted that his Celexa prescription may, in fact, be the cause of Mr. Rice's suicidal thoughts.  Mr. Rice told the physicians that he owned guns and that he wanted to shoot himself with one of his guns.  Nevertheless, the doctors allegedly determined that Mr. Rice could not be involuntarily committed and permitted Mr. Rice to leave the VAMC against medical advice and without warning to family members of the risk presented by his access to guns.  Twenty days later, Mr. Rice threatened his wife with a gun, which led to the arrival of the police, Mr. Rice's flight, a shootout between Mr. Rice and the police, and ultimately his death by a gunshot wound.  Based on these allegations, Mrs. Rice has plausibly pleaded that Mr. Rice's erratic actions that led to his encounter with the police—and ultimately to his death—were a natural and probable consequence of the VAMC's medical malpractice.

Of course, the government may ultimately prove by expert testimony that the VAMC did not deviate from generally accepted medical standards in its care of Mr. Rice. However, that is not the question before the court. At this stage, the court must accept as true Mrs. Rice's allegations that the VAMC's actions deviated from accepted medical standards and need only determine whether Mr. Rice's death was an unforeseeable result of those actions as a matter of law. The court has no trouble answering that question in the negative. The complaint sufficiently alleges that the VAMC was acutely aware of Mr. Rice's risk of suicide and that it was providing medical services to address Mr. Rice's depression and suicidal ideations. Accepting as true that Mr. Rice committed suicide by cop,[1] it is certainly plausible that the VAMC should have foreseen this outcome if it did not exercise reasonable care. Moreover, even if the court did not construe the alleged police encounter as suicide by cop, the complaint plausibly alleges that the intervening acts of Mr. Rice threatening his wife with a gun and consequential shootout with the police were a foreseeable outgrowth of the VAMC's failure to provide proper medical treatment and care for Mr. Rice's depression and suicidal inclinations. See Jones v. Beth Israel Hosp., 2018 WL 1779344, at *10 (S.D.N.Y. Apr. 12, 2018) ("Plaintiff's submissions also plausibly plead that Defendant's deviation from the standard of care was the proximate cause of his injury—his inability to control his emotions and his ongoing suicidal ideations that led to his attack of the N.Y.P.D. officers."). Under

---

[1] Suicide by cop has been recognized by courts as a form of suicide. See, e.g., Molchon v. Tyler, 546 S.E.2d 691, 693 (Va. 2001) (finding that a fatal gunshot by police was fired under circumstances that "were the equivalent of suicide"); Freeman v. Stephens, 614 F. App'x. 180, 182 n.2 (5th Cir. June 9, 2015) (quoting Black's Law Dictionary 1662 (10th ed. 2014)) (defining "suicide-by-cop" as "[a] form of suicide in which the suicidal person intentionally engages in life-threatening behavior to induce a police officer to shoot the person").

either construction, the complaint plausibly alleges that Mr. Rice's death was set into motion by the VAMC's wrongful acts and was a foreseeable result of those acts.

This result best aligns with South Carolina caselaw regarding medical malpractice as a proximate cause of suicide. For example, in <u>Bramlette</u>, the court declined to decide proximate cause as a matter of law despite an unusual series of acts between a doctor's error and his patient's suicide. 393 S.E.2d at 917. The patient in <u>Bramlette</u> was initially placed on suicidal precautions status, meaning that the patient was not allowed off hospital grounds and was observed every fifteen minutes by hospital staff. <u>Id.</u> at 915. His physician thereafter ordered the patient's status changed from suicidal precautions to active observation. <u>Id.</u> The patient was permitted off the hospital grounds on a recreational outing with a small group of fellow patients and an occupational therapist. <u>Id.</u> On that outing, the patient told the driver to pull the hospital vehicle off the road to let him out to vomit. <u>Id.</u> The patient then ran to a highway overpass twenty feet away, climbed up on the ledge, and flung himself to his death. <u>Id.</u> A psychiatric expert testified that the doctor deviated from the accepted standard of practice in failing to get a complete history from the family; failing to order more intense supervision; failing to prohibit an outing off hospital grounds; and failing to diagnose the patient as a high risk for suicide. <u>Id.</u> at 916. Despite the intervening negligence of a bus driver and the patient's decision to exit the bus onto a highway and commit suicide, the court found that the issue of proximate cause was properly submitted to the jury. <u>Id.</u> at 917.

Likewise, in <u>Sloan v. Edgewood Sanatorium, Inc.</u>, 80 S.E.2d 348 (S.C. 1954), the decedent was twice admitted to a mental health facility in one month to receive electro-shock and then medication therapy. <u>Id.</u> at 348–49. The first hospitalization ended when

11

the decedent left against medical advice. Id. During the second admission, doctors admitted knowing the decedent had "very definite suicidal tendencies" requiring constant supervision from hospital staff. Id. at 349. However, during a period when he was left alone, the decedent hung himself in the bathroom adjacent to his hospital room. Id. A medical malpractice suit on the decedent's behalf was litigated through trial and resulted in a verdict in plaintiff's favor. The South Carolina Supreme Court affirmed the verdict, rejecting the hospital's argument that the suicide was unforeseeable as a matter of law. Id. at 353.

The court is persuaded by Bramlette and Sloan that South Carolina courts are hesitant to remove the issue of proximate cause from the factfinder in medical malpractice cases where the provider is tasked with addressing suicidality. The government suggests that the instant case is distinguishable from Bramlette and Sloan because Mr. Rice had been out of the VAMC's custody for twenty days before his death. However, there is no requirement under South Carolina law that a patient be in a medical provider's custody for that patient's suicide to be foreseeable. Moreover, the court does not find that the twenty intervening days between Mr. Rice's discharge from the VAMC and his death break the causal chain as a matter of law—particularly in light of the allegation that Mr. Rice emailed a nurse at the VAMC to complain of his continued depression and issues with Celexa only five days before his death. The court's decision to the contrary in its vacated Order of Dismissal turned on "the general rule . . . that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death." ECF No. 43 at 7. The court found that the only potentially relevant exception to the general rule was when "the decedent was in the custody and

under the care of the defendant, and suicide was both foreseeable and the 'natural and probable consequence' of the defendants' negligence." Id. at 8. The court found that the exception did not apply when Mr. Rice had not been in the custody of the VAMC for twenty days, notwithstanding the allegation that the physician-patient relationship continued after Mr. Rice was discharged from the VAMC. However, after the South Carolina Supreme Court's clarification in Wickersham that there is no general rule that suicide constitutes a superseding force that cuts off liability, the court finds that the temporal proximity between the VAMC's custody and his death is not dispositive of the proximate cause issue as a matter of law.[2]

Overall, the court does not find that this is one of the rare and exceptional cases where proximate cause may be decided as a matter of law. Mrs. Rice's allegations suggest a causal link between the VAMC's alleged deviation from the standard of care

---

[2] The government also relies on McKnight v. S.C. Dep't of Corr., 684 S.E.2d 566, 570 (S.C. Ct. App. 2009) in arguing that the lapse of time between Mr. Rice's discharge and his death breaks the chain of causation. In McKnight, the personal representative of a deceased former inmate brought a survival and wrongful death action against the South Carolina Department of Corrections and a contract medical services provider stemming from the former inmate's suicide. Id. at 567. The South Carolina Court of Appeals affirmed summary judgment against the personal representative plaintiff on the basis that "any deficiency in treatment was too attenuated from [the former inmate's] death to have proximately caused it because he committed suicide over a year after his discharge [from the medical contractor's custody]." Id. In so finding, the court relied not only on the passage of time, but also on unforeseeable intervening acts, including the inmate's abuse by prison guards, that broke the chain of causation. Id. McKnight does not compel a similar outcome in this case because the three weeks between Mr. Rice's discharge and his death is far less than the thirteen months that passed in McKnight, and the court finds no unforeseeable intervening acts alleged in Mrs. Rice's complaint similar to the intervening acts in McKnight. The court's Order of Dismissal that cited McKnight in reaching the opposite conclusion was erroneously based on the "general rule" that suicide was a superseding force that automatically broke the causal chain as a matter of law, such that the court found Mr. Rice's shoot-off with the police to be an intervening force comparable to those in McKnight.

and Mr. Rice's death and are sufficient to survive a motion to dismiss on Mrs. Rice's negligence claims.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

                                          **DAVID C. NORTON**
                                          **UNITED STATES DISTRICT JUDGE**

**March 21, 2022**
**Charleston, South Carolina**